# Second National Bank of Monmouth, et al. v. Frank Thuet, et al.

### Gen. No. 12,292.

1. CHATTEL MORTGAGE—*what passes interest under.* The sale by the mortgagee of a chattel mortgage and the note secured thereby, coupled with the endorsement of such note and the delivery of the same together with such mortgage to the purchaser, operates to pass the entire interest of the mortgagee.

2. CHATTEL MORTGAGE—*where must be recorded.* A chattel mortgage in Illinois must be recorded in the county where the mortgagor resided at the time of execution and record, otherwise it is void as to third persons.

3. CHATTEL MORTGAGE—*when not prima facie evidence in replevin suit.* A chattel mortgage under which possession has been allowed to remain with the mortgagor but which is not acknowledged and recorded as provided by statute, is void as against the rights of third persons and is not *prima facie* competent evidence against such persons in a replevin suit.

4. "THIRD PERSONS"—*as used in section 1 of Chattel Mortgage Act, construed.* A chattel mortgage which is defectively acknowledged and recorded is void except only as to the mortgagor and those representatives who stand in his shoes and· have, by operation of law, or otherwise, only his rights, and except as to those also who are shown not to be claiming the right of possession, or if claiming, to be doing so in bad faith; and the burden of proof is upon those claiming under the chattel mortgage to show that the adverse claimants belong to one of those classes as to whom such a mortgage is valid, and this before the mortgage may properly be introduced in evidence.

5. REPLEVIN—*burden of proof in.* The burden of proof is upon the plaintiff in replevin to show that the property replevied and delivered to him under the writ was his property.

6. INSTRUCTIONS—*what does not cure error in.* An error in a statement of law contained in an instruction is not cured by another instruction containing a contrary and contradictory statement, even though such latter instruction be correct.

Action of replevin. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the March term, 1905. Reversed and remanded. Opinion filed February 13, 1906.

| **Statement by the Court.** This is an appeal from a judgment of the Circuit Court of Cook county in an action of replevin brought by Frank and William Thuet, live stock commission merchants, against the Second National Bank of Monmouth, Illinois, and various persons composing the firm of Clay, Robinson & Co. The declaration is in three counts, and alleges in the first count the wrongful taking and detaining from the plaintiffs, and in the second the wrongful detaining from the plaintiffs of fifty-four cattle, "being the same cattle described in a certain mortgage made by J. B. Russell to Sansom Thayer Commission Company, dated April 5, 1901, and also in a certain mortgage made by said Russell to Thuet Bros., dated October 8, 1901, then being on the Tom Hainline pasture near Sciota, McDonough county." The third count is the usual trover count for the same property.

Clay Robinson & Co. were stock yard brokers employed to sell for the bank the cattle replevied. Their interest in the case, therefore, is confined to certain commissions and freight charges for which they claim a lien. They pleaded *non cepit, non detinet,* property in a third person, and a special plea that the cattle came rightfully into their possession from the owners, the Second National Bank of Monmouth, and that Clay Robinson & Co. had a lien for freight charges expended by them and for a commission for making a sale. These pleas the plaintiff took issue on.

The Second National Bank, the party defendant chiefly in interest, pleaded to the declaration: first, *non cepit;* second, *non detinet;* third, that it is not guilty as alleged in the trover count of the declaration; fourth, that the cattle were the property of the Second National Bank of Monmouth, and not of the plaintiff; and fifth, property in a third party. Plaintiff took issue also on these pleas. The cause was tried before a jury, and the verdict was for the plaintiff, finding "that the right to the possession of the property in question is in the plaintiffs." A motion for a new trial was denied and a judgment entered that the plaintiff have and

retain the property replevied and recover costs from the defendants.

An appeal having been taken by the Second National Bank of Monmouth to this court, it is here assigned as error that the trial court erroneously ruled on the admission and exclusion of evidence, in not instructing the jury peremptorily to find for the defendants, in refusing other proper instructions offered by defendants, and giving improper instructions asked by the plaintiffs, and in not granting a new trial, because the verdict was contrary to the law and the evidence.

PHELPS & CLELAND, for appellants; VICTOR M. HARDING, of counsel.

ERIC WINTERS, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

In the view we take of this case it is not necessary to discuss the evidence in any detail. It shows a controversy between Thuet Brothers, a firm composed of the plaintiffs, and the Second National Bank of Monmouth, one of the defendants, concerning the right to the possession of fifty-four cattle. Both parties claimed under chattel mortgages. The mortgage under which the bank claimed was the renewal of one originally made by one Robert McLaughlin, November 20, 1900, the renewal being made May 18, 1901. Both the original mortgage and the renewed or substituted mortgage were made to one J. B. Russell, to secure notes made by McLaughlin to the order of Russell. Russell sold the original note and mortgage to the bank, endorsing the note and delivering it and the mortgage. On receiving the renewed note and mortgage he substituted them at the bank by like endorsement and delivery. By these transactions all Russell's interest in the cattle covered by this mortgage passed to the bank. Gaff v. Harding, 48 Ill., 148; Kreider v. Faning, 74 Ill. App., 231.

The mortgage under which Thuet Bros. claimed was one made October 8, 1901, by Russell on one hundred and eight

cattle said to be cared for at that date on a certain tract of land known as the "Hainline pasture" in McDonough county, Illinois. The declaration of the plaintiffs would indicate that this mortgage of October 8, 1901, may be claimed to have been a renewal of one given six months before by Russell. It is immaterial. The mortgage of October 8th is made the sole basis of plaintiffs' claim. It was offered in evidence, and over objection admitted. Thus to admit it was error. It was acknowledged before a justice of the peace in the town of Roseville by J. B. Russell, October 10, 1901, and recorded in McDonough county, October 25, 1901. Russell resided at both dates in Warren county, and so far as it appears never lived in McDonough county.

The statute of Illinois concerning chattel mortgages provides: "That no mortgage, trust deed, or other conveyance of personal property having the effect of a mortgage or lien upon such property shall be valid as against the rights and interest *of any third person,* unless possession thereof shall be delivered to and remain with the grantee, or the instrument shall provide for the possession of the property to remain with the grantor *and the instrument is acknowledged and recorded as hereinafter directed,*" and "Such instrument shall be acknowledged before a justice of the peace of the town or precinct where the mortgagor resides," etc. And also, "Such mortgage, trust deed, or other conveyance of personal property acknowledged as provided in this act, shall be admitted to record by the recorder of the county in which the mortgagor shall reside at the time when the instrument is executed and recorded, or in case the mortgagor is not a resident of this State, then in the county where the property is situated and kept, and shall thereupon, if *bona fide,* be good and valid from the time it is filed for record until the maturity of the entire debt or obligation or extension thereof made as hereinafter specified."

It is plain that under these provisions of the statute, the chattel mortgage under which the plaintiffs claim was invalid as against the rights of parties who could be properly held to be "third persons." The right given by a chattel

mortgage, where possession is not taken by the mortgagee, is in derogation of the common law, and the persons claiming under it must show that it has the necessary elements to establish the right. Frank v. Miner, 50 Ill., 444; Porter v. Dement, 35 Ill., 480; Long v. Cockern, 29 Ill. App., 312; Long v. Cockern, 128 Ill., 29; Roberts v. Kingsbury, 71 Ill. App., 451.

Recording in the proper county—record elsewhere being entirely nugatory—is as essential to the validity of such a mortgage as any other element entering into its making. Blatchford v. Boyden, 122 Ill., 657.

A chattel mortgage, therefore, under which possession has been allowed to remain with the mortgagor, but which is not recorded in the proper county, being void as against the rights of third persons, is not *prima facie* competent evidence against such persons in a replevin suit.

Appellees, however, claim that the expression "any third person" in the statute must be construed to mean a person having an interest in the property as a lienor or purchaser from the mortgagor, and that before the plaintiffs' mortgage could be adjudged invalid as against the defendants, the defendants must prove their interest as such lienors or purchasers. This would involve, of course, the identity of the cattle in controversy with those described in the respective mortgages produced by the parties. The trial court seems to have agreed with the plaintiffs in their contention. Counsel cite in argument in favor of it, Sumner v. McKee, 89 Ill., 127, in which the court held that a widow of the mortgagor, taking as such widow after the death of the mortgagor personal property mortgaged, stands in the shoes of her deceased husband, whose estate she took, and is not " a third person." This is the point decided, but the language of the learned judge deciding the case is claimed to go further. It is this:

"Suffering mortgaged property to remain in the possession of the mortgagor without an agreement to that effect in the mortgage itself, is not understood as endangering in any respect the lien as against the mortgagor. It is only when

the interests of third persons are to be affected the question can arise, and this on the principle, a party can not be permitted to appear as owner of property by having it in possession while the title is in another. Who were meant by 'third parties,' as that term is used in the statute? Can it mean any other than creditors and subsequent incumbrancers? We understand the law to be, that a chattel mortgage is only void as to third persons if possession is not taken on maturity of the note it was given to secure, but we have never understood that the widow, heir, or administrator of a mortgagor was such 'third person.' They stand in the shoes of the deceased, and are his representatives and concluded by all lawful acts and contracts he may have entered into or performed."

In Badger v. Batavia Paper Mfg. Co. et al., 70 Ill., 302, the Supreme Court in reversing a judgment for the appellee, a defendant in a replevin suit for a boiler mortgaged to the appellant by a third party whose premises had been, by his assignee in bankruptcy, deeded to the appellee by a deed expressly excepting the boiler, said: "There was no pretense on the part of the defendants that they had any claim of interest whatever in the property further than as a fixture, and there was not a particle of evidence upon the point. * * * It is insisted that the chattel mortgage is void because not acknowledged before a justice of the peace of the proper county, and a memorandum of the same entered on his docket as required by the statute. The mortgage was good between the parties without a compliance with the Chattel Mortgage Act. The defendants do not appear to have been either purchasers, incumbrancers or creditors, or to have had any interest in the property. Any mortgage good between the original parties is good as to the defendants."

On the authority of these cases probably, a learned judge of the Fourth District, in Allcock v. Loy, 100 Ill. App., 53, reversing the judgment of a circuit court, said: "The requirements of Sections 1, 2, 3 and 4 of the Chattel Mortgage Act apply only as to interested third persons, and do not in any manner affect the status of the parties to the instru-

ment. The third person that may avail of the statute must have an interest in the property such as that of subsequent purchaser, subsequent incumbrancer, lienor, judgment creditor, or an officer, bailiff or custodian in possession by virtue of a valid writ, execution or warrant. Appellant's evidence made a *prima facie* case and did not disclose that appellee was in any manner such an interested third party as the statute provides for, and as appellee offered no evidence, the court could not assume that he had such interest. *Mere naked possession is not such an interest, and if appellee had other interest than mere possession, the burden was upon him to prove it. Appellant should not have been required to prove that appellee had not such interest."*

The opinion of the learned judge seems in point, but it is of authority with us only so far as it commends itself to our judgment. With the portion of the above excerpt which is italicized we especially find ourselves unable to agree.

On the other hand, the Supreme Court in Forest v. Tinkham et al., 29 Ill., 141, speaking of an unrecorded chattel mortgage, says: "Failing in these requirements, whilst it was binding upon the parties to it, yet it was void as to third persons." As a matter of fact, however, "the third persons" involved in the cause were subsequent purchasers.

In Porter v. Dement, 35 Ill., 478, the "third party" involved was a sheriff who had levied an execution, but the language of the Supreme Court is, "as between the parties a chattel mortgage is valid without acknowledging or recording, *but it has no effect upon the rights of third parties acting in good faith.* There is no want of good faith on the part of a creditor in levying on his debtor's property included in a chattel mortgage which the law declares void as to him."

In Sage v. Browning, 51 Ill., 217, MR. JUSTICE LAWRENCE says, there is no analogy between the Chattel Mortgage Act and the act regulating the effect of recording of real estate mortgages, because "In the one act, a mortgage not legally executed and acknowledged, is declared void, as to all third persons; in the other, an unrecorded deed is declared void,

as to creditors and subsequent purchasers without notice."

In McDowell v. Stewart, 83 Ill., 538, the Supreme Court, in deciding a case where the third person involved was a sheriff who had levied an execution, uses the language, "As between the parties, it" (a chattel mortgage) "was valid without any acknowledgment, but without the acknowledgment it has no effect upon the rights of third parties acting in good faith."

In Long v. Cockern, 128 Ill., 29, the "third person" being a creditor of the mortgagor without a lien, who had taken possession of the chattels in part satisfaction for a debt, the court said the defective mortgage was void as to him, and it was immaterial whether he had notice or not. In the Appellate Court, in the same case, the Appellate Court of the Third District said (Long v. Cockern, 29 Ill. App., 304): "If the mortgage was not executed, acknowledged and recorded in accordance with the statute in reference to chattel mortgages, it was void as a chattel mortgage against all third persons, whether they had actual notice of the facts in reference to Long's claim or not. If Metcalf acted in good faith in purchasing the mill, * * * if he took it in payment of a pre-existing debt for a fair consideration, with the *bona fide* intention of paying himself, it does not matter," etc.

In Fahndrich v. Hudson, 76 Ill. App., 644, this court, speaking through MR. JUSTICE WINDES, quoted as authority for its decision against the validity of a chattel mortgage set up as against a constable's levy, the language of the Supreme Court in McDonald v. Stewart, *supra,* that "as between the parties it was valid without any acknowledgment; but without the acknowledgment it has no effect upon the rights of third parties acting in good faith."

In Weil v. Zacher, 92 Ill., 296, this court held that a defectively acknowledged chattel mortgage, although good between mortgagor and mortgagee, was not good as against a purchaser at a sale made by a receiver appointed on a creditor's bill. Although the receiver as representing the insolvent, could not question the validity of the mortgage, the

purchaser in good faith could, seems to be the *ratio decidendi* of the case.

There are other cases in the Supreme Court, like Webster v. Nichols, 104 Ill., 160, and Barchard v. Kohn, 157 Ill., 579, where, limiting the opinion to the case before them, the court has said that such a defective chattel mortgage is good as between the mortgagor and his representatives, and the mortgagee, and is not good as against subsequent purchasers, incumbrancers and creditors, but they throw no light on the question involved here, which is of the effect of such mortgage as against persons belonging to neither of the classes mentioned.

We think that considering the plain language of the statute and the language of the Supreme Court in the various cases in which it has been construed, it is quite clear that it is against all persons whatever that a defectively acknowledged or recorded chattel mortgage is void, except only the mortgagor and those representatives who stand in his shoes and have, by operation of law, or otherwise, only his rights, and except those also who are shown not to be claiming the right of possession, or if claiming, to be doing so in bad faith.

In the present case, the pleadings of the appellant disclosed that it claimed the cattle and the right of possession of them. The evidence for the plaintiffs showed also conclusively, we think, that the cattle were never in the possession of the plaintiffs, but had been taken possession of by the defendants before a question was raised with it by the plaintiffs' representatives. There was no evidence that such possession or claim was in bad faith, and we think that the burden of proof in this case was on the plaintiffs, to prove that the defendants belonged to one of the classes excepted by legal construction from the very general and comprehensive language of the statute, before they could properly introduce into evidence an instrument which that statute says shall be invalid as against the rights and interests of *any* third person.

It may be argued that the "rights" and "interests" of

the third person must be made to appear before the mortgage can be held invalid as to them, but it seems to us that the mortgage being a lien given in derogation of the common law, with no intendments or presumptions in its favor except as the statute gives them, the mortgagee must rely on his strict compliance with the requirements of the statute, and if he has failed in them, cannot assert his claims under the mortgage against a third person in peaceful possession and claiming title, until he has assumed and carried the burden of proving that such possessor has not "a right or interest."

That this throws on the plaintiff, contrary to the general rule, the necessity of proving a negative, is the misfortune resulting from his defective mortgage, which is only good against a very limited class of people. A person has a "right," being in peaceable possession of property and claiming title, not to be disturbed therein, except by some one showing a better right. If the contention of the appellees concerning the identity of the cattle in controversy here be correct, we think it must be asserted by Russell, not by the plaintiffs as holders of the defective mortgage they were allowed to introduce in evidence.

Our views thus far expressed are sufficient to dispose of this case, for they remove the basis on which the plaintiffs' case must rest. It is proper for us to say, however, that these views render also necessary the conclusion that the peremptory instruction for the defendants at the close of the plaintiffs' evidence and at the close of all the evidence, should have been given, and that we think that in any aspect of the case instruction 2, given to the jury at the instance of the plaintiffs, is erroneous. It is as follows:

"2. The jury are instructed that if they believe from the evidence that the cattle described in the chattel mortgage offered in evidence by the defendant and the cattle that were described in the mortgage offered in evidence by the plaintiff, were in the same pasture, and that the defendants were entitled to the possession of the cattle described in their mortgage, then it is incumbent on the defendants to prove that the cattle taken by them were the identical cattle described

in said mortgage, and unless the jury believe from the evidence that the cattle taken by the defendants were the identical cattle described in their said mortgage, they will give their verdict for the plaintiffs."

This is plainly wrong in shifting the burden of proof. It is a rudimentary principle that the burden of proof is on a replevinor to show that the property replevied and delivered to him under the writ was his property. Anderson v. Talcott, 6 Ill., 365, 371; Reynolds v. McCormick, 62 Ill., 412; and many other cases.

Under this instruction, however, nothing was required of the plaintiffs but proof that the cattle described in the chattel mortgage offered in evidence by them, and those described in the chattel mortgage offered by defendant were in the same pasture. With this proof the verdict must be for the plaintiffs, unless the defendant took and successfully carried the burden of proving its right to the identical cattle taken by it and afterward replevied from it.

Even though the court gave other instructions for the defendant inconsistent with this and more correctly stating the law concerning the burden of proof in the case, the error was not cured.

"The cases," says the Supreme Court in Chicago v. Keegan, 185 Ill., 70, "in which it has been held that a bad instruction may be cured by another, are cases where the good and bad instructions when read together clearly state the law, and where it can be clearly seen that the bad instruction has worked no harm." This is not such a case, we think. In consonance with the positions hereinbefore taken, concerning the effect of a defective mortgage and concerning the burden of proof in this case, other objections may be found to the instructions, but they are not material to discuss. With the view of the law taken by the court in this case, they will not be likely to be again given. Were it not for the fourth plea of the appellant, we should be disposed simply to reverse the judgment. With this plea of property in the defendant, on which the defendant is asking

for a verdict finding the property in itself, we must reverse
the judgment and remand the case.   We do not deem it
necessary to discuss the weight of the evidence as it was ac-
tually presented.   A basis for the plaintiffs' case in a mort-
gage competent as evidence was lacking.

J udgment reversed and remanded for further proceedings·
not inconsistent herewith.

*Reversed and remanded.*